UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH STINES,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____/

CIVIL NO. 04-74075
CRIM. NO. 98-80812

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

# OPINION AND ORDER DENYING PETITIONER'S 28 U.S.C. §2255 MOTION TO SET ASIDE SENTENCE BASED ON EVIDENTIARY HEARING TESTIMONY OF RASUL WARREN

On January 22, 2010, this Court held an evidentiary hearing on Petitioner's post-conviction claim of prosecutorial misconduct. Mr. Rasul Warren, a trial witness, testified at the hearing. Pre-hearing and post-hearing memoranda of law were submitted by the parties.

Having reviewed the memoranda and exhibits, the transcript of the hearing, and the relevant law, the Court denies Petitioner's claim of prosecutorial misconduct based upon Mr. Warren's hearing testimony.

## BACKGROUND

On July 17, 2009, the Court held a status conference at which Petitioner's counsel stated that trial witness Rasul Warren had given a post-trial statement to Government investigators that he had been encouraged by then-Assistant U.S. Attorney Richard Convertino, one of the trial prosecutors, to "put" all of the crack cocaine in his possession at the time of his arrest, on Stines as his supplier, rather than just some of it on Stines, and that Warren had a secret deal with that

1

prosecutor to receive a lesser sentence than was revealed in his Rule 11 plea agreement and in his trial testimony. Petitioner's counsel stated at the status conference that Rasul Warren was the one person who had admitted perjury in Stines' trial.

Based on these allegations by Petitioner, the Court ordered an evidentiary hearing at which Mr. Warren testified.

Mr. Warren was sentenced by Federal District Judge Avern Cohn after testifying in the instant case.

The Court notes that in establishing a factual basis at his plea proceeding, in a separate drug case before Judge Cohn, that occurred prior to his testimony in the instant case, Mr. Warren had identified only Petitioner Joseph Stines as a co-conspirator in his crack cocaine trafficking. Michael Lang was the Assistant U.S. Attorney at Warren's plea proceeding; Mr. Stines had not yet been charged in the instant seven-defendant case.

## RASUL WARREN'S TESTIMONY AT THE EVIDENTIARY PROCEEDING

Warren testified that AUSA Richard Convertino told him "he was God in the courtroom", and that if Warren wanted to get home to see his son by his twelfth birthday (in two years), he should testify that all the drugs seized from Warren when he was arrested by the Michigan Absconder Squad, had come from Stines. January 22, 2010 Evidentiary Hearing Transcript, (hereafter Hearing) Pp. 18-19. Warren stated that he testified falsely at the trial about Stines being the only source of the cocaine; that it had come from more than one person, and that he had so informed Convertino. TR. P.22.[1]

---

[1]On a separate issue relating to Stines' co-defendant Keith Phelan, Warren testified that Convertino told him to switch the type of drug that Phelan was dealing from marijuana to crack cocaine. TR. P.21.

Warren further testified that Convertino coached him to not reveal certain sentencing promises, but rather to stick with a ten year sentence, a figure from the Rule 11 (F.R.Crim.P.) Plea agreement.

Warren's testimony contained the following significant exchange with Petitioner's counsel:

> A. He just told me don't say anything that he made any promises, but along the way he promised several other people they was going home, everybody, yes.
>
> Q. And you know that from talking to the other people?
>
> A. Yes.
>
> Q. What other people?
>
> A. Leave that alone, <u>stick to the script</u>.

TR. P.22 (emphasis added). This apparently refers to a script developed pre-hearing between Petitioner's counsel and the witness.

On cross examination, AUSA Bruce Judge asked Mr. Warren:

> Q. So, as you sit here today though, your testimony is that it was not all Mr. Stines', that dope that was found inside the car . . . .
>
> A. No, it wasn't.
>
> Q. So whose else was it?
>
> A. That's – I'm not sure.
>
> Q. Not sure?
>
> A. I mean I'm not saying the names, but all it was.
> . . .
> I don't know. It was a long time ago, but I know it wasn't all his.
> . . . .

>So I'm just saying certain things I can and I can't remember.
>
>Q. Do you remember any of the other people besides Mr. Stines you were getting drugs from back in October of '96?
>
>A. No.
>. . .
>
>Q. But you testified [at the trial] under oath that you got [drugs] back in '89 from Mr. Stines?
>
>A. I can't recall.
>. . .
>
>Q. [F]rom '89 forward you said that you were getting your crack from Mr. Stines. Do you recall that?
>
>A. Can't recall, sir.

TR. Pp. 38-40.

The AUSA also questioned Mr. Warren about his trial testimony regarding threats he received from Mr. Stines at the Wayne County Jail and at the Federal Court lockup because of his being a trial witness, including the statement that "snitches don't live." Mr. Warren said he didn't recall that. TR. P.41.

Mr. Warren further testified at the instant hearing that he didn't recall telling the lawyer representing him during the trial, that he had lied while testifying.

Mr. Warren further testified that in January of 2005 he wrote a four page letter to case agents stating that "Chippie [Stines] already been sending people to me to tell me to help." Mr. Stines, TR. P.49. Warren testified he thought the letter would get the government to help get him out of prison where he'd been reincarcerated for a probation violation. TR. Pp. 49-50. When asked by the AUSA at the instant hearing about his 2006 violation hearing:

>Q. Did you bring up to your attorney the fact that you had

4

> something pretty important, you had lied for the government
> . . . .
> That you had lied [at the trial] because the government had told you to lie.
>
> A. I'm not sure.

TR. P.51.

## **LEGAL DISCUSSION**

A recent decision by the United States Court of Appeals for the Sixth Circuit addresses the subject of recantation testimony:

> Because Brooks's claims that the prosecution recruited Nelson as a State informant and knowingly presented his false testimony at trial depend wholly on Nelson's testimony. Brooks's argument hinges on the credibility of Nelson as a witness at the federal habeas proceedings. But the district court discredited Nelson's testimony, and <u>this court views with great suspicion the recantation testimony of trial witnesses in postconviction proceedings</u>. E.g. *Carter v. Mitchell* 443 F.3d 517, 539 (6th Cir. 2006).

*Brooks v. Tennessee*, ___F.3d___ (6th Cir. 2010), 2010 WL 4721099, Nov. 23, 2010, Slip Op. P.27. (emphasis added).

This Court has had the opportunity to view Mr. Warren's testimony at trial and at the instant hearing. At the trial this Court also had the opportunity to hear the tape recorded conversations between the recently arrested and cooperating Warren and Stines, who had not yet been charged. The tapes clearly evidence that Mr. Stines was his drug supplier, and that Mr. Stines was going to absorb the loss (nothing about part of the loss) for the drugs seized by the authorities from Warren.

The Court finds that Warren's testimony at trial was credible – it conformed to the tapes, and other testimony establishing Mr. Stines as the head of the Stone Life drug trafficking

organization, and Warren being a member of Stone Life.

There was extensive trial testimony, and even more extensive trial cross-examination concerning Mr. Warren's Rule 11 plea agreement, the fact that he was yet to be sentenced, and the fact that the prosecution would make a recommendation to Judge Cohn at his sentencing.

As to Mr. Warren's testimony at the instant evidentiary hearing – recanting his trial testimony – the Court does not find that testimony to be credible. Indeed, the Court finds Mr. Warren's testimony inherently incredible. The Court's conclusion is bolstered by Warren's many "don't recall" answers to probing questions on cross-examination and his admonition to Stines' attorney to "stick to the script" in her questioning on direct. This Court's conclusion is also supported by the post-arrest tapes between Warren and Petitioner Stines, that support his trial testimony about Sines being the drug source, and contradict his hearing recantation testimony. Finally, the Court notes that there was extensive trial testimony and cross-examination regarding his cooperation and his ultimate sentencing scenario before Judge Cohn, and the fact that the prosecution has control over whether to make a 5K recommendation.

## **CONCLUSION**

In the trial of the instant case, AUSA Lang, in closing, stated what had been apparent throughout the testimony in this case – that every witness, who was involved in drug trafficking had been promised something with regard to sentencing in exchange for their testimony. Thus, unlike in *Bell v. Bell*, 512 F.3d 223, 232-33 (6th Cir. 2008) (en banc) where trial testimony did not reveal that consideration was provided by the Government to witness Davenport in exchange for his testimony, every witness, and Warren in particular, testified to consideration, and was cross-examined extensively about that consideration.

The Court notes that the Bell opinion reiterated that both "an express agreement between the prosecution and a witness is possible impeachment material that must be turned over under Brady" as well as "a less formal, unwritten or tacit agreement." *Id*. at 233.

The question here is whether Warren's testimony establishes an express or an unwritten or tacit agreement between himself and the prosecution that was not divulged. The Court concludes that it does not.

The Court concludes that Petitioner has not established through Warren's testimony, by a preponderance of the evidence that prosecutorial misconduct by AUSA Convertino occurred regarding petitioner's claim of subornation of perjury by instructing Warren to lie about the source of the drugs, and his future upcoming sentence before another Federal District Judge. The Court does not credit Rasul Warren's testimony at the instant hearing.

Accordingly, the Court DENIES Petitioner's 28 U.S.C. §2255 Motion to Set Aside Sentence based on the evidentiary hearing testimony of Rasul Warren.

SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 1, 2010

CERTIFICATE OF SERVICE

7

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 1, 2010.

                S/Denise Goodine
                Case Manager